**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

BRIDGETTE ANN FLOYD                                                    PLAINTIFF

v.                                                  CIVIL ACTION NO. 3:02-cv-1588WS

COMMUNICATIONS WORKERS OF
AMERICA, ET AL.                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants, the Communications Workers of

America and the International Union of Electrical Workers[1] for summary judgment brought

pursuant to Rules 56(b) and (c)[2] of the Federal Rules of Civil Procedure [**Docket No. 23-

1**].  On October 15, 2002, the plaintiff, proceeding *pro se,* but supposedly relying on the

counsel of a Tennessee attorney, filed the instant complaint, claiming that she had been

denied permanent employment with the Communications Workers of America, while

similarly situated Caucasian-Americans had been hired by the union.  The plaintiff further

claimed that Caucasian-Americans with less seniority than the plaintiff were paid more for

---

[1]The International Union of Electrical Workers (IUEW) was merged into the Communications Workers of America (CWA) on October 1, 2000.

[2]Rule 56(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[a] party against whom a claim . . . is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Rule 56(c) of the Federal Rules of Civil Procedure provides, in pertinent part, the following:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

similar work.  The plaintiff also claimed to be the victim of sexual harassment, which she says she reported and which was allegedly ignored by her employer.

Plaintiff brings her complaint under Title VII of the Civil Rights Act of 1964, Section 703(a)(1), which deals with unlawful employment practices and provides in pertinent part that "[i]t shall be an unlawful employment practice for an employer -- (1) [t]o fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin... ."  Title 42 U.S.C. § 2000e- 2(a)(1).  This court's jurisdiction over this dispute is provided by statute, § 706(f)(3) of Title VII which establishes federal court jurisdiction over actions brought under Title VII. See Title 42 U.S.C. § 2000e-5(f)(3).[3]

## BACKGROUND

The International Union of Electrical Workers, organized in 1949, reached a record high membership of 320,000 in 1970.  Then, between 1970 and 1980, membership receded almost 100,000 due to plant closings and lay-offs.  By 1996, say defendants, membership was down to 125,000 and receding.  By 2000, membership had dwindled to 113,000.  In 1995, say defendants, the International Union of Electrical Workers' assets

---

[3]Title  42 U.S.C. § 2000e-5(f)(3) provides that, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought."

were depleted and the organization had a deficit of almost $1,000,000.00.  So, in order to cut costs, the organization offered early retirement to its employees, conducted layoffs, and cut its full time staff by fifty employees between 1997 and 2004.  These dire circumstances, say defendants, motivated all their personnel decisions and policies.

The parties agree that the plaintiff was hired in August of 1999 for the position of "Temporary Organizer," and that she worked part-time.  In her position, plaintiff was to assist with the organization of the employees of the Head Start Program in eleven Mississippi counties.  According to the defendants, the plaintiff was paid on an hourly basis and was not eligible for either full-time employee's benefits or union membership. Furthermore, say defendants, being hired as a part-time employee was no guarantee of full-time employment.

The plaintiff eventually was laid off from her employment with the International Union of Electrical Workers, allegedly due to a reduction-in-force on November 30, 2001. When the Communications Workers of America and the International Union of Electrical Workers merged and became the IUE-CWA in Mississippi, the full-time employees of both organizations became employees of the Communications Workers of America.  This policy, say defendants, did not apply to temporary and part-time workers such as the plaintiff.  Moreover, say defendants, temporary organizers (or "blue voucher" workers), such as the plaintiff, had never been included in any collective bargaining agreement between the Communications Workers of America and its employees.

The defendants also say that after their merger they still were operating over their budget, so, they decided that further cuts of employee positions were in order.  With

3

regard to the plaintiff's position, the defendants decided to continue its organization efforts in the Mississippi area with just one full-time staff member.  This meant that the plaintiff's part-time position would have to be eliminated.  Additionally, say defendants, the plaintiff, as a recently hired employee, should be among the first to be terminated.

As events transpired, a permanent staff member for the Communications Workers, one Althea Baptist, an African-American organizer in South Carolina, was moved to Mississippi to provide support services to the merged organizations in the Mississippi area.  The person who was occupying the support position to be taken over by Althea Baptist was Connie Speight, an African-American and also a permanent staff member.  Connie Speight was tapped for the full-time organizer position which the plaintiff had hoped to get, and the plaintiff was terminated after notice on November 30, 2001.

The plaintiff was "replaced" by an African-American and cannot present a prima facie case of discrimination, argue defendants.  Furthermore, the defendants say that the plaintiff never submitted her sexual harassment claim to the Equal Employment Opportunity Commission ("EEOC") for administrative exhaustion.  Accordingly, the defendants ask this court to grant them summary judgment as to the plaintiff's Title VII claims, apparently the only claims asserted in the complaint.

The plaintiff did not respond to the defendants' motion for summary judgment as required by the rules of this court which direct a nonmoving party to present a memorandum of authorities in response and in opposition to the motion.  The defendants' motion for summary was filed in November of 2004.  Pursuant to Rule 7.2(D) of the Uniform Rules of this court, the plaintiff's response was due "within ten days after service

4

of the movant's memorandum." The plaintiff offered no response whatsoever until January of 2005 when she sought additional time to respond. Subsequently, the plaintiff submitted what she purported to be a response to the motion for summary judgment which contains many assertions and accusations. The defendants contend that the plaintiff has submitted nothing more than her own conclusory, subjective belief that she had been terminated from her employment with the defendants for discriminatory reasons, assertions which with the defendants disagree. *Auguster v. Vermilion Parish School Board*, 249 F.3d 400, 403 (5th Cir. 2001). The defendants further contend that the plaintiff has submitted no evidence to support her claim of discriminatory termination, and, most tellingly, that she has never submitted her claim of sexual harassment to the EEOC.[4]

### THE PLAINTIFF'S EEOC CHARGES

No right-to-sue letter appears in the record. Exhibits "M" and "N" attached to the defendants' motion for summary judgment show that the plaintiff filed an EEOC charge on October 12, 2001, Charge No. 131-A2-00065, over one month before being laid off on November 30, 2001. The plaintiff amended her EEOC charge on February 27, 2002, claiming retaliation for the filing of the October 12, 2001, charge. The initial discrimination charge states that the plaintiff was the victim of racial discrimination because she was not

---

[4]The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir.1990)).

permitted to join the Communications Workers of America and was being laid off, while

Caucasian Americans were being paid more and were not being laid off.

Employment discrimination plaintiffs must exhaust their administrative remedies

before pursuing claims in federal court.  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379

(5th Cir. 2002).  Exhaustion occurs when the plaintiff files a timely charge with the EEOC

and receives a statutory notice of right to sue.  *Dao v. Auchan Hyper-market*, 96 F.3d

787, 788-89 (5th Cir. 1996).  Title 42 U.S.C. § 2000e-5(f)(1) provides in pertinent part as

follows:

> ... if within one hundred and eighty days from the filing of such charge or the
> expiration of any period of reference under subsection (c) or (d) of this
> section, whichever is later, the Commission has not filed a civil action under
> this section or the Attorney General has not filed a civil action in a case
> involving a government, governmental agency, or political subdivision, or the
> Commission has not entered into a conciliation agreement to which the
> person aggrieved is a party, the Commission, or the Attorney General in a
> case involving a government, governmental agency, or political subdivision,
> shall so notify the person aggrieved *and within ninety days after the giving
> of such notice a civil action may be brought against the respondent named
> in the charge (A) by the person claiming to be aggrieved* ... .

So, Title VII provides that claimants have ninety (90) days to file a civil action after

receipt of such a notice, or right-to-sue letter, from the EEOC.  *Taylor v. Books A Million,*

*Inc.*, at 379, citing  *Nilsen v. City of Moss Point, Miss.*, 674 F.2d 379, 381 (5th Cir. 1982);

Title 42 U.S.C. § 2000e-5(f)(1).  This requirement to file a lawsuit within the ninety-day

limitation period is strictly construed.  *Taylor v. Books A Million, Inc.*, at 379;  *Ringgold v.*

*National Maintenance Corporation*, 796 F.2d 769, 770 (5th Cir. 1986).

In the instant case the plaintiff filed her first charge with the EEOC on October 12,

2001.  Then, the plaintiff amended her charge to include a claim of retaliation on February

27, 2002.  This court is now informed that Charge No. 131-A2-00065 was closed and the right-to-letter issued on July 18, 2002.  Since the plaintiff filed the instant lawsuit on October 15, 2002, her filing of the instant lawsuit is timely.

### THE COMPLAINT

The plaintiff's complaint states that the plaintiff is a resident of Mendenhall in Simpson County, Mississippi, that at all times pertinent she was fully qualified for the employment from which she was terminated, and that she is an African-American.  The complaint further states that the plaintiff suffered employment discrimination because of her race and that she was subjected to sexual harassment by her supervisor.  Additionally, the plaintiff says that the reduction in force imposed by the Communications Workers of America after the merger with the International Union of Electrical Workers was merely a pretext in order to eliminate African-American employees.  Finally, in her complaint, plaintiff claims retaliation.[5]

The complaint contemplates discriminatory termination (lay-off) from employment and retaliation, as well as discriminatory exclusion from union membership as the plaintiff asserted in her EEOC charge.  On December 11, 2001, the plaintiff signed and submitted a charge to the National Labor Relations Board contending that she had been terminated from her job for seeking to become a member of the Communications Workers of America.  Title 29 U.S.C. § 158(a)(3) provides that an employer commits an unfair labor

---

[5]The complaint is signed by one Brian O. Bowhan who purports to be a member of the Bar of the State of Tennessee, TN BPR # 14760.  The summons served on the defendants also is signed by Brian O. Bowhan, who identifies himself as the plaintiff's attorney.  Another pleading refers to Bowhan being "of counsel."  However, Bowhan has not made an appearance as counsel for the plaintiff, nor has he sought to be admitted to the Southern District of Mississippi, either *pro hac vice* or otherwise.

practice, "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: ... ." This matter was resolved in favor of the Communications Workers of America. The NLRB found that the plaintiff had been laid off for legitimate business reasons. That finding is not dispositive of any claims before this court.

When the plaintiff filed her charge with the EEOC, she did not include any allegations of sexual harassment. This is significant because the scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Thomas v. Texas Department of Criminal Justice*, 220 F.3d 389, 395 (5th Cir. 2000); and *Young v. City of Houston*, 906 F.2d 177, 179 (5th Cir. 1990). Title VII claims raising new acts of discrimination or theories of liability not reasonably related to the allegations contained within the plaintiff's EEOC charge are not appropriate. *Ray v. Freeman*, 626 F.2d 439, 442 (5th Cir. 1980); *National Association of Government Employees v. City Public Service Board of San Antonio*, 40 F.3d 698, 711-12 (5th Cir. 1994). The Fifth Circuit will not permit plaintiffs to enlarge the scope of their EEOC charges by adding to their lawsuits complaints of a wholly different type of discrimination than that alleged in the plaintiffs' EEOC charges. For instance, an allegation of sex discrimination could not reasonably be expected to grow out of an original complaint of race discrimination. *Manning v. Chevron Chemical Company*, 332 F.3d 874, 878-79 (5th Cir. 2003), *cert. denied*, 540 U.S. 1107, 124 S.Ct. 1060, 157 L.Ed.2d 892 (2004). In *Thomas v. Texas Department of Criminal Justice*, the plaintiff was not permitted to amend a pretrial order to include the theory of gender

8

discrimination when the EEOC charge alleged only race discrimination.  *Thomas*, 220 F.3d at 395.

On the other hand, a complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the EEOC. *National Association of Government Employees v. City Public Service Board of San Antonio*, 40 F.3d at 711, quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970).

The plaintiff's claims of discriminatory termination and retaliation were submitted to the EEOC, but the plaintiff's complaint raises for the first time the matter of sexual harassment, a claim the plaintiff failed to assert in either her original EEOC charge or the amendment to her charge.  Therefore, this court shall address the plaintiff's claims based on discriminatory termination and retaliation on their merits, while disposing of the plaintiff's claim of sexual harassment for the reasons which follow.

### THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the facts and law as represented in the pleadings, affidavits and other summary judgment evidence show that no reasonable trier of fact could find for the nonmoving party as to any material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251,106 S.Ct. 2505, 91 L.Ed.2d 202 (1986);  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002).  "A fact is 'material ' if it 'might affect the outcome of the suit under governing law." ' *Bazan v. Hidalgo County,*

246 F.3d 481, 489 (5th Cir. 2001).  The nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corporation*, 477 U.S. at 322-23; *Anderson*, 477 U.S. at 257; *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).   All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996); *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir. 2003);  *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001).  The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.*"  Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).  Furthermore, only reasonable inferences can be drawn from the evidence in favor of the nonmoving party.  *Eastman Kodak Company v. Image Technology Services, Inc.*, 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted ."  *Id.* at 468-69. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence."  *Anderson*, 477 U.S. at 247-48;  *Hart v. O'Brien*, 127 F.3d 424, 435 (5th Cir.1997), cert. denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown*, 337 F.3d at 540; *Bridgmon v. Array Systems Corporation*, 325 F.3d 572, 577 (5th Cir. 2003); *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir.), *cert. denied*, 537 U.S. 950, 123 S.Ct. 386, 154 L.Ed.2d 295 (2002).   Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corporation*, 477 U.S. at 322.

## THE TITLE VII STANDARDS

Title VII prohibits covered employers from discriminating against "any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *See* Title 42 U.S.C. § 2000e2(a)(1).   A plaintiff is required to prove discriminatory animus and may do so by presenting either direct or circumstantial evidence. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002); *Wallace v. Methodist Hospital Systems*, 271 F.3d 212, 219 (5th Cir. 2001) (same); *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (same).   If the plaintiff elects the former approach, the plaintiff must offer "direct" evidence of discrimination, defined as "evidence that, if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse v. Magnolia Hospital*, 92 F.3d 248, 252 (5th Cir. 1996).   If a plaintiff produces direct evidence of discrimination, the burden of persuasion shifts to the defendant to prove that it would have taken the same action regardless of discriminatory animus. *Standstad v.*

11

*CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002), citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-53, 109 S.Ct. 1775, 1792, 104 L.Ed.2d 268 (1989).

Alternatively, a plaintiff may prove intentional discrimination via indirect or circumstantial evidence.  This indirect approach is governed by the familiar, tripartite burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973); *Standstad*, 309 F.3d at 896.  Preliminarily, the plaintiff must establish a prima facie case of discrimination.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000).  To establish a prima facie case of race discrimination, the plaintiff must show (1) that she was a member of a protected group, African- American; (2) that she was qualified for her position; (3) that she was dismissed or suffered an adverse employment action; and (4) that the defendant sought to replace her with a similarly qualified white employee.  *Ward v. Bechtel Corporation*, 102 F.3d 199, 202 (5th Cir. 1997).

Once a prima facie is made, a presumption of discrimination arises, and the burden of production shifts to the employer to respond with a legitimate, nondiscriminatory reason for its decision.[6]  *McDonnell Douglas*, 411 U.S. at 802, 935 S.Ct. at 1824.  If the employer carries its burden, the presumption of discrimination dissipates and the burden of production then shifts back to the plaintiff to demonstrate that the defendant's articulated reason was merely a pretext for discrimination.  *St. Mary's*

---

[6]This burden on the employer is only one of production, not persuasion, involving no credibility assessments. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 101 S.Ct. 1089, 1094-95, 67 L.Ed.2d 207  (1981).

12

*Honor Center v. Hicks*, 509 U.S. 502, 511-12, 113 S.Ct. 2742, 2749-50, 125 L.Ed.2d 407 (1993).  Although the *McDonnell Douglas* framework shifts the burden of production between the plaintiff and the defendant, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

<u>ANALYSIS OF THE PLAINTIFF'S TITLE VII CLAIMS</u>

**A.  <u>The Discriminatory Termination Claim</u>**

The plaintiff says she was terminated from her position as a "Temporary Organizer" for the International Union of Electrical Workers because of her race.  The plaintiff, however, does not allege that the person chosen for the permanent, full-time organizer position and who took over all the organizer duties in the Mississippi area was someone other than Connie Speight, an African-American.

To establish a prima facie case of discrimination under Title VII, the plaintiff must show that: (1) she belongs to a protected class;  (2) she was qualified for the job she sought;  (3) she was not promoted (hired); and (4) the position she sought *was filled by someone outside her protected class*.  *Blow v. City of San Antonio, Texas*, 236 F.3d 293, 296 (5th Cir. 2001).  Clearly, the plaintiff cannot establish that the organizer position she occupied as a temporary, part-time employee was filled by someone outside her protected class.  The defendants also show that Connie Speight was already a full-time staff member of the Communications Workers of America and that her selection was based on this seniority.

Additionally, the defendants note, and the plaintiff does not dispute, all persons who occupied the positions of "Temporary Organizer" on a part-time basis or otherwise who were hired with the plaintiff to organize the Head Start workers were African-Americans. Thus, even if one of these was paid more or was allowed to take a full-time job, the person receiving allegedly better treatment than the plaintiff would be someone from within the plaintiff's protected class.

Finally, the plaintiff has not submitted evidence that any Caucasian-Americans similarly situated as the plaintiff were given preferential treatment. To raise an inference of discrimination, the plaintiff may compare her treatment to that of nearly identical, similarly situated individuals. *Mayberry v. Vought Aircraft Company*, 55 F.3d 1086, 1090 (5th Cir. 1995). The plaintiff must demonstrate that employees outside her protected class received preferential treatment in circumstances nearly identical to hers. *Aldrup v. Caldera*, 274 F.3d 282, 287 n. 23 (5th Cir. 2001).

In an effort to prove this factor, plaintiff contends that she had seniority over a Communications Workers of America employee in another state well away from the Mississippi region in question and that the out-of-state employee should have been terminated before the plaintiff. The lack of a common supervisor and geographic region leads this court to conclude that the out-of-state employee simply is not a similarly situated comparator for the purpose of asserting that the plaintiff received discriminatory treatment. *See Sanguinetti v. United Parcel Service, Inc.*, 114 F.Supp.2d 1313 (S.D. Fla. 2000), *aff'd* 254 F.3d 75 (Table) (11th Cir. 2001).

14

Thus, this court is left with its earlier conclusion:  the plaintiff has not identified a similarly situated person outside the plaintiff's protected class who was treated differently as to termination.  As such, plaintiff has not presented *prima facie* proof on the fourth element of the *McDonnell Douglas Corporation v. Green* test.  *Bodenheimer v. PPG Industies, Inc.*, 5 F.3d 955, 957 (5th Cir. 1993) (a plaintiff must establish a prima facie case by proving all the elements of a discrimination claim).

## B.  The Retaliation Claim

Plaintiff submits her claim of retaliation pursuant to Title 42 U.S.C. § 2000e-3(a) which prohibits retaliation against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter."  The plaintiff has submitted no evidence to support directly her contention that her termination was the result of retaliation.  So, if the plaintiff is to establish a prima facie case of retaliation under the indirect method, she must show that:  (1) she engaged in statutorily protected activity;  (2) she performed her job according to her employer's legitimate expectations; (3) despite her satisfactory job performance, she suffered an adverse employment action;  and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity.  *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to unlawful retaliation cases);  *Johnson v. Chapel Hill Independent School District*, 853 F.2d 375, 381 (5th Cir. 1988) (applying the *McDonnell Douglas* analysis to a differential treatment case).

Moreover, the plaintiff must produce some evidence of a causal link between the activity protected by Title VII and the adverse employment action. *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 540 (5th Cir. 1998);  and *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001).  A causal link is established when the evidence demonstrates that the employer's decision to terminate was in part on knowledge of the employee's protected activity. *Mota v. The University of Texas Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001);  *Medina v. Ramsey Steel Company*, 238 F.3d 674, 684 (5th Cir. 2001);  and *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d 164, 168 (5th Cir. 1999) ("If an employer is unaware of an employee's protected conduct at the time of the adverse employment action, the employer plainly could not have retaliated against the employee based on that conduct").

In the instant case the plaintiff says that one William McKelligan of the Communications Workers of America told her that she was not eligible for union membership because she was a temporary employee, and that her immediate supervisor told her that she was to be laid off on December 1, 2001.  At the time the plaintiff was told these things, she had not yet filed her first employment discrimination charge with the EEOC.  In fact, the plaintiff filed her initial charge with the EEOC only after she was told these things.  The charge filed October 12, 2001, states that the plaintiff's request to join the union was denied on July 25, 2001, and that her lay-off notice came on September 25, 2001.  The plaintiff filed her October 12, 2001, charge, and made no reference to the matter of retaliation.  Later, on February 27, 2001, the plaintiff amended her charge to include retaliation;  however, the amendment did not change the dates already asserted.

16

Clearly, the defendants could not have known of the plaintiff's EEOC charge when she was denied union membership and informed of her lay-off because the charge had not yet been filed.  Thus, according to the evidence presented, the defendants could not have retaliated against the plaintiff based on her having filed an EEOC claim.  *Chaney v. New Orleans Public Facility Management, Inc.*, 179 F.3d at 168.  The plaintiff's burden of establishing a causal link between the activity protected by Title VII and the adverse employment action cannot be met.

### C.  The Sexual Harassment Claim

Next, the plaintiff has raised the issue of sexual harassment.  The plaintiff, though, has made no showing that she ever submitted this claim to the EEOC for a conciliation hearing and administrative exhaustion.  This court notes once again that a condition precedent for bringing suit on an employment discrimination claim under Title VII such as sexual harassment is the timely filing and exhaustion of an EEOC charge.  *See* Title 42 U.S.C. § 2000e-5(e)(1) (Title VII requires parties to exhaust administrative remedies before commencing suit in federal court);  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002), *cert. denied*, 537 U.S. 1200, 123 S.Ct. 1287, 154 L.Ed.2d 1041 (2003).  Federal courts have no jurisdiction to consider Title VII claims as to which the aggrieved party has not exhausted administrative remedies."  *National Association of Government Employees v. City Public Service Board of San Antonio, Texas*, 40 F.3d 698, 711 (5th Cir. 1994).  This court may dismiss claims *sua sponte* where its subject matter jurisdiction is absent due to the failure to obtain a right-to-sue letter prior to filing a

particular Title VII claim.  *Stockman v. Federal Election Commission*, 138 F.3d 144, 151

(5th Cir. 1990).

<u>**CONCLUSION**</u>

In the instant case the plaintiff contends in her response, among other things,  that

she was not paid on an hourly basis as asserted by the defendants;  that she was not

assigned to her position to work solely on the Head Start recruitment and organization;

that her pay voucher was the same as that of the regular employees;  that she was not

paid overtime or for weekend work;  that the Communications Workers of America

stopped paying per diem;  that the merger made all employees Communications Workers

of America employees;  that the plaintiff received a congratulatory letter when the merger

took place welcoming her as a Communications Workers of America employee;  that

collective bargaining agreements were to remain in effect after the merger;  and that she

had seniority over an employee in Ohio.  None of these assertions is meaningfully

probative of discriminatory animus in regard to the plaintiff's termination, even if some of

the assertions might establish circumstantial evidence of unfair employment practices.

Moreover, these assertions do not, in light of the evidence presented by the defendants,

present to this court a genuine issue of material fact as to whether discriminatory animus

was a motivating factor in decision of the defendants to reorganize their personnel

structure in the manner that they did.  An employer is entitled to judgment as a matter of

law "if the evidence taken as a whole would not allow a [fact-finder] to infer that the actual

reason for the [employer's decision] was discriminatory."  *Vadie v. Mississippi State

University,* 218 F.3d 365, 372 (5th Cir.), *cert. denied*, 531 U.S. 1113, 121 S.Ct. 859, 148

L.Ed.2d 772 (2001).  Consequently, based upon the material, undisputed facts, this court finds the defendants' motion for summary judgment [Docket **No. 23-1**] well taken and it is granted.  In accordance with the local rules, this court will enter a Final Judgment.

 **SO ORDERED,** this the 16th day of March, 2006.

**s/ HENRY T. WINGATE**

**CHIEF UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:02-cv-1588 WS